UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| ELSIE L. CAMPBELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | 4:06-cv-0124-SEB-WGH |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of the Social Security Administration, | ) ) ) | |
| Defendant.[1] | ) | |

### Entry Discussing Complaint for Judicial Review

Elsie L. Campbell ("Campbell") seeks judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of her application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"), 42 U.S.C. § 301, *et seq*.

For the reasons explained in this Entry, the Commissioner's decision must be **affirmed.**

### I. BACKGROUND

Campbell applied for DIB on October 27, 2003, alleging an onset date of July 5, 2002. Her application was denied initially and upon reconsideration. Her request for a hearing before an Administrative Law Judge ("ALJ") was granted, and such hearing was conducted on February 2, 2006. Campbell was present, accompanied by her attorney. Medical and other records were introduced into evidence. Campbell, her ex-husband, and a vocational expert testified. The ALJ denied Campbell's application on March 23, 2006. On July 26, 2006, the Appeals Council denied Campbell's request for review of the ALJ's decision, making the ALJ's decision final. *See Luna v. Shalala,* 22 F.3d 687, 689 (7th Cir. 1994). This action for judicial review of the ALJ's decision followed. The court has jurisdiction over Campbell's complaint pursuant to 42 U.S.C. § 405(g), which provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . in [a] district court of the United States."

---

[1]On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Pursuant to Rule 25(d) of the *Federal Rules of Civil Procedure*, Michael J. Astrue, in his official capacity only, is the proper defendant in this action.

The ALJ's decision included the following findings: (1) Campbell alleges she has been unable to work since July 5, 2002; (2) Campbell met the nondisability requirements of the Act and was insured for benefits at least through the date of the ALJ's decision; (3) Campbell had not engaged in substantial gainful activity since the alleged onset of disability; (4) Campbell's severe impairments were carpal tunnel syndrome (s/p bilateral releases in 2003), degenerative disc disease in the cervical spine, and depression; (5) whether considered individually or in combination, these impairments did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulations No. 4; (6) Campbell's allegations with regard to the disabling severity of her symptoms and functional limitations were not credible because they were unsupported by objective medical findings and contrary to other evidence of record; (7) Campbell had the residual functional capacity ("RFC") to: lift/carry and push/pull ten pounds occasionally and five pounds frequently, in an eight hour workday she could stand/walk six hours and sit six hours, she was limited to occasional bilateral handling and fingering, she could occasionally balance, stoop, kneel, crouch, crawl, and climb ramps or stairs, she could perform only routine repetitive tasks and understand and carry out only simple instructions, and no math skills could be required and no more than sixth grade reading skills; (8) Campbell was unable to perform her past relevant work as she performed it and as it is customarily performed; (9) Campbell was a "younger individual," 43 years old on the alleged onset date and 47 years old at the time of the ALJ's decision; (10) Campbell had a sixth grade or "marginal" education and was literate and had a history of unskilled work;  and (11) although Campbell's nonexertional limitations did not allow her to perform the full range of sedentary work, using Medical-Vocational Rules 201.18 and 201.24 as a framework for decision-making, there were a significant number of jobs in the national economy she could perform, including sedentary unskilled inspector and hand packer jobs. With these findings in hand, and through the application of applicable rules and regulations, the ALJ concluded that Campbell was not under a "disability" as defined in the Act at any time through the date of the ALJ's decision.

## II.  DISCUSSION

### A.    Applicable Law

To be eligible for disability benefits, a claimant must prove she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1).

A five-step inquiry outlined in Social Security regulations is used to determine disability status. *Butera v. Apfel,* 173 F.3d 1049, 1054 (7th Cir. 1999).

> In order to determine whether an individual is entitled to disability insurance benefits, the ALJ must engage in a sequential five-step process which establishes whether or not the claimant is disabled. The claimant must show

that: (1) he is not presently employed; (2) his impairment is severe; (3) his impairment is listed or equal to a listing in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) he is not able to perform his past relevant work; and (5) he is unable to perform any other work within the national and local economy. *Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir.1997); 20 C.F.R. § 416.920.

*Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

The task a court faces in a case such as this is not to attempt a *de novo* determination of the plaintiff's entitlement to benefits, but to decide if the Commissioner's decision was supported by substantial evidence and otherwise is free of legal error. *Kendrick v. Shalala,* 998 F.2d 455, 458 (7th Cir. 1993). "Substantial evidence" has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB,* 305 U.S. 197, 229 (1938)).

### B. Analysis

The ALJ found that Campbell had "severe" impairments of carpal tunnel syndrome (s/p bilateral releases in 2003), degenerative disc disease in the cervical spine, and depression, but that she could perform a significant number of sedentary jobs. (R. at 21-26). Campbell argues that the ALJ's decision is not supported by substantial evidence.

Campbell first argues that the ALJ erred in finding that she was literate. The ALJ determined that Campbell completed the 6th grade, which is a marginal education, and that she was literate. (R. at 24). The regulations define "illiteracy" and "marginal education" as follows:

> (1) Illiteracy. Illiteracy means the inability to read or write. We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling.
>
> (2) Marginal education. Marginal education means ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs. We generally consider that formal schooling at a 6th grade level or less is a marginal education.

20 C.F.R. § 404.1564(b).

The ALJ stated that during the hearing, Campbell testified that she could not read or write. (R. at 24, 261). She testified that she completed the 4th grade. *Id.* The jobs that the vocational expert found Campbell capable of performing required an ability to read and write at least at the 1st to 4th grade levels. (R. at 293). The ALJ noted that contrary to

Campbell's testimony at the hearing, on the application forms Campbell indicated that she could write more than her name, she completed the 6th grade, and she went to elementary school from 1965 to 1971. (R. at 24, 73, 80). He further noted that Campbell reported to a consulting examining physician that she completed 6 years of education. (R. at 24, 208). Campbell had a friend fill out forms because of pain in her hands when she wrote. (R. at 24, 81, 108). The ALJ noted that Campbell did not say that she did not fill out the forms because she could not write. (R. at 24).

The court must decline any invitation to resolve conflicts in or reweigh the evidence. *Diaz v. Chater,* 55 F.3d 300, 305 (7th Cir. 1995) ("We cannot substitute our own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled."). The ALJ considered the conflicting evidence with regard to Campbell's education and her ability to read and write. The ALJ explained his reasoning, and it is supported by substantial evidence.

Campbell next contends that the ALJ erred in evaluating her depression. She suggests that her testimony reveals a more severe depression than that found by the ALJ. The ALJ stated that in March 2005, Campbell reported a new complaint, depression. (R. at 21, 238). The ALJ noted that Campbell was treated with medications, and that she reported significant improvement within a few months. (R. at 21, 239-244). The ALJ further noted that in October 2005 when Campbell moved into a new modular home, she reported that this relieved some of her stress. (R. at 21, 243). The ALJ concluded that the evidence of depression was minimal and was confined to a few treatment notes from Campbell's primary care physician, and that depression caused no more than a mild restriction in activities, mild difficulty maintaining social functioning, and moderate difficulty with concentration, persistence and pace. (R. at 22). Campbell does not explain in what ways she is more limited than that found by the ALJ, nor does she point to any other evidence which contradicts the ALJ's evaluation. The ALJ's evaluation of Campbell's allegations of depression is supported by substantial evidence.

Campbell further argues that the ALJ erred in finding that she could perform a significant number of jobs. The ALJ concluded, after consulting a vocational expert, that there were two jobs that Campbell could perform: unskilled sedentary inspector (50 locally and 100,000 nationally) and hand packer (75 locally and 150,000 nationally). (R. at 24, 289). If the number of jobs at issue were only 125, a remand would be required. *See Lee v. Sullivan,* 988 F.2d 789, 794 (7th Cir. 1993) (finding that 1,400 jobs were a significant number, and noting that other circuits had found 174 to 1,350 jobs were a significant number). The number of jobs at issue, however, is 125 locally and 250,000 nationally. Unfortunately for Campbell, the regulations state that "work exists in the national economy when it exists in significant numbers either in the region where you live or in several other regions of the country." 20 C.F.R. § 404.1566(a); 42 U.S.C. § 423(d)(2)(A). In addition, it does not matter whether work exists in the immediate area in which the claimant lives. *Id.* "Lack of work in your local area" does not render a claimant disabled. 20 C.F.R. § 404.1566(c). *See Barrett v. Barnhart,* 368 F.3d 691, 692 (7th Cir. 2004) (although the Seventh Circuit found only a few cases in which national numbers alone were cited as a basis for denying benefits, in practice the "other regions" language in the statute prevents the Social Security Administration from denying benefits on the basis of isolated jobs that

4

exist only in very limited numbers in relatively few locations outside of the claimant's region of residence). Here, the national numbers cited by the vocational expert do not appear to represent "very limited numbers." Although the discrepancy between local jobs and national jobs is great in this case, pursuant to the above authority, the ALJ's finding that a significant number of jobs exists in the national economy is supported by substantial evidence.

Finally, Campbell argues that the ALJ's evaluation of the testimony of Campbell and of her ex-husband was flawed. The proper criteria to consider when evaluating a claimant's credibility include: daily activities; the location, duration, frequency, and intensity of pain; precipitating and aggravating factors; type, dosage, effectiveness, and side-effects of medication; treatment, other than medication, for relief of pain; and the objective medical evidence and any other factors concerning functional limitations and restrictions. *See* (R. at 22, citing Social Security Ruling 96-7p; 20 C.F.R. § 404.1529). The ALJ discussed Campbell's testimony, her husband's testimony, the medical evidence, testing results, physician reports, and evaluations by State Agency experts. (R. at 22-23). He noted that no treating source had opined that Campbell was disabled. (R. at 23). He reasoned that Campbell's credibility was greatly diminished because of the significant gap in the medical record between doctor visits, from September 2003 to March 2005. *Id.* Specifically, the ALJ found it curious why Campbell did not at least contact the surgeon who performed the carpal tunnel releases if they provided no relief. (R. at 23). The ALJ acknowledged that Campbell explained that she did not have insurance and could not afford expensive testing, but he noted that she is supported by her ex-husband and that her brother and son started paying for her to see a doctor in 2005. *Id.*[2] The ALJ noted that Campbell's symptoms of depression responded to medications and she had not been encouraged to seek counseling. *Id.* He noted that Campbell's testimony regarding her daily activities was supported by her ex-husband's testimony, but that her ex-husband was not an impartial witness. (R. at 22-23). The ALJ discussed several clinical findings in support of his determination that they were "minimal." (R. at 23).

The ALJ credited Campbell's reports of functional limitations to some extent in assessing her RFC, finding that she could do sedentary level work with restrictions. The court grants special deference to the credibility determination made by the ALJ and generally will not overturn an ALJ's credibility finding unless it is "patently wrong." *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir.2001). In this case, the ALJ provided reasons supported by record evidence for finding not fully credible Campbell's allegations that she was totally disabled. The ALJ's discussion relating to Campbell's credibility is adequate to allow the court to trace his reasoning. The court does not find that the ALJ's analysis is patently wrong, and therefore, must affirm the ALJ's credibility determination.

In determining Campbell's eligibility for benefits, the ALJ applied the proper analytical methodology and fairly considered and weighed the evidence. The ALJ's decision was based on consideration of: (1) Campbell's age, education, and work history; (2)

---

[2]The ALJ remarked that Campbell had money to buy a pack of cigarettes a day and that she should therefore be able to come up with money to have her hands re-evaluated. This somewhat biased inference is not supported by the record, as there is no indication as to how Campbell obtains her cigarettes.

Campbell's history of diagnoses, treatment, medications, and evaluations; (3) Campbell's own account of her conditions, capabilities, limitations, symptoms and daily routine; and (4) the testimony of her ex-husband and a vocational expert. An ALJ's decision is sufficient if, as is true in this case, "it assures us that an ALJ considered the important evidence and enables us to trace its reasoning." *Brindisi v. Barnhart*, 315 F.3d 783, 787 (7th Cir. 2003).

There was no significant evidence, symptom, complaint, or issue which the ALJ's decision overlooked. The ALJ discussed the evidence and explained his rationale for accepting and rejecting the various opinions of record. As noted above, the court cannot reweigh the evidence. Substantial evidence supports the ALJ's findings of fact and identification and assessment of Campbell's physical and mental impairments, and there was no error of law in the manner in which the evidence was evaluated. The ALJ sufficiently articulated his assessment of the evidence and there was substantial evidence to support the ALJ's determination that Campbell was not disabled at any time through the date of the ALJ's decision.

### III. CONCLUSION

There was no reversible error in the determination of Campbell's eligibility for DIB. The final decision of the Commissioner is supported by substantial evidence and is not tainted by legal error. In these circumstances, Campbell is not entitled to relief in this action. Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 08/22/2007

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana